FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y
★ SEP 19 2007 ★

P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
UNITED STATES OF AMERICA,

               Plaintiff,

-against-

DWAYNE STONE,
JAMES McTIER and
SHARIEF RUSSELL,

               Defendant.
-------------------------------------------------x

MEMORANDUM AND ORDER
05 CR 401 (ILG)

GLASSER, United States District Judge:

    The government has moved this Court for an order that would exempt it from furnishing the defendants with a list of the veniremen and of the witnesses to be produced for trial stating the place of abode for each asserting that providing that list may jeopardize the life or safety of any of them and urging the Court to find that they have established their entitlement to that exemption by a preponderance of the evidence.

    The prerequisite for empaneling an anonymous jury and exempting the government from the application of § 3432 overlap in a capital case and the entitlement to each must be established by a preponderance of the evidence. In determining whether that standard has been met, an evidentiary hearing is not mandatory. The Court may consider the indictment and affidavits submitted by the parties. United States v. Krout, 66 F.3d 1420, 1427 (5th Cir. 1995), *cert. denied sub nom.* Campos Alvarez v. United States, 516 U.S. 1136 (1996); United States v. Wilson, 160 F.3d 732, 747 (D.C. Cir. 1998), *cert. denied*, 528 U.S. 828 (1999) (the district court did not abuse its discretion by not conducting an evidentiary hearing where the government relied on the

charges in the indictment and affidavits); United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995) (the district court has discretion to determine whether or not an evidentiary hearing is needed on the government's allegations supporting a request for an anonymous jury).

A summary account of the indictment leads inexorably to the conclusion that the exemption the government requests is warranted.

The defendants are charged with active membership in a racketeering enterprise known as the Folk Nation which is also known as the Black Gangstas and the Black Gangsta Disciples, a gang active in numerous cities and prisons across the country. The predicate racketeering acts (RAs) with which McTier is charged include narcotics distribution (RA1); attempted murder of persons from Tapscott Street, Brooklyn (RA5); murder of Ricky Tubens (RA6); conspiracy to murder and murder (RA8(a)(b)); murder of S. Ayatolla (RA9); conspiracy to murder rival gang members; attempted murder of rival gang members and murder of Tabitha Buckman (RA10(a)(b)(c)); conspiracy to murder John Doe #3 (RA12).

The predicate RAs with which Stone is charged include narcotics distribution (RA2); conspiracy to rob and robbery of narcotics traffickers (RA3(a)(b)); murder conspiracy and murder (RA7(a)(b)); attempted murder of rival gang members (RA13).

Russell was charged with murder (RA11) and attempted murder of a NYPD officer.

The substantive crimes with which the defendants are charged are as follows: McTier being (JM); Russell being (SR) and Stone being (DS): RICO conspiracy (JM), (SR), (DS); Distribution of Cocaine Base (crack) (SR), (DS); Attempted Murder in Aid of

Racketeering (JM), (SR); Use of a Firearm in Relation to a Crime of Violence (JM), (DS), (SR); Attempted Murder in Aid of Racketeering (JM); Assault in Aid of Racketeering (JM), (DS); Conspiracy to Murder in Aid of Racketeering (JM), (DS); Murder in Aid of Racketeering (DS); Transportation of Stolen Firearms (DS), (SR).

An affidavit submitted by FBI Special Agent Jed Salter averred that: (1) Russell attempted to bribe a corrections officer at Rikers Island if he would not testify against him for having a weapon in prison; (2) McTier attempted to initiate a gang riot at the Metropolitan Correction Center; (3) A cooperating witness advised that the defendants discussed a plan to assault Deputy United States Marshals at the next status conference; (4) A cooperating witness advised that Stone requested another cooperating witness to convince an eyewitness to a shooting not to testify against him; (5) a cooperating witness advised that a fellow Folk Nation gang member requested him to tamper with an eyewitness to a murder and that it was understood within that gang that persons cooperating with the police or testifying against other gang members should be shot; (6) a victim's family member was sought to be convinced not to cooperate with this investigation by a member of Stone's family who made threatening comments to that person.

The various factors, described in one way or another by a multitude of cases discussing the propriety of empaneling an anonymous jury has been aptly synthesized for § 3432 cases as follows: "Does the defendant, either by himself or through associates or an organization, have the present or future capacity to harm jurors?" United States v. Honken, 378 F. Supp. 2d 880, 907 (N.D. Iowa 2004). And paraphrasing United States v. Darden, 70 F.3d 1507, 1532-33 (8th Cir. 1995), *cert. denied*, 517 U.S. 1149 (1996),

3

wrote that "what matters is the nature of the criminal enterprise as one that has been in the past, or potentially could be in the future, involved in harming jurors . . . . That decision also suggests that a pertinent issue is whether members of that criminal organization or enterprise remain at large at the time of trial, such that they might have the ability to interfere with jurors . . . . In other words, the question is not just whether the defendant and his 'organization' have attempted to interfere with the criminal justice system in the past, but whether the defendant has the present ability to do so, notwithstanding his incarceration, through his associates or 'organization.'" Honken. *supra*. Those cases speak exquisitely to the facts before me. Plainly, there are strong reasons to believe that the jury and witnesses need protection and reasonable precautions can and will be taken to minimize any prejudicial effects on the defendants and to ensure that their fundamental rights are protected. See also United States v. Wilson, 493 F. Supp. 2d 397 (E.D.N.Y. 2006); United States v. Tomero, 486 F. Supp. 2d 320 (S.D.N.Y. 2007); United States v. Scala, 405 F. Supp. 2d 450 (S.D.N.Y. 2005); United States v. Paccione, 949 F.2d 1183 (2d Cir. 1991).

The defendants have suggested a middle ground to the anonymity of jurors, that being to provide the undisclosed pedigree information to their counsel but not to them. That suggestion involves a substantial risk of inadvertent disclosure of that exempt information to the defendants and the risk that any "leaks" might be attributed to counsel, and is therefore rejected. See Honken, 378 F. Supp. 2d at 920-21.

All of the foregoing reasons counsel that this motion be granted, and it is

SO ORDERED.

Dated:    Brooklyn, New York
         September 19, 2007

                                              /s/ I. Leo Glasser
                                              I. Leo Glasser